OPINION OF THE COURT
Sheldon S. Levy, J.
Defendant’s 18-B counsel requests trial court approval of his fee for time spent in defense of his indigent client. The problem is that this 18-B attorney did not perform personally all of the legal work for which he now seeks compensation. Apparently, this practice is widespread, but the decision herein — of first impression as a reported case — contains a caveat to the Bench and an admonition to the Bar.
In point of fact, it appears that the assigned attorney did most or all of the preliminary and preparatory work, but that *425 a colleague — also an 18-B attorney — with whom he shares office space, conducted the actual trial before me.
However, both the pretrial work-up of the case and the conduct of the trial proceedings were done in exemplary fashion. The hours expended and the total fee claimed are not in issue. The important questions are whether a defendant’s rights can be violated under such circumstances and whether an attorney should be requesting a fee in his name for trial hours spent by another attorney.
Article 18-B of the County Law was promulgated in 1965 to insure the proper representation of criminal indigents and of certain other specified persons by qualified lawyers (L 1965, ch 878). At the same time, provision was made for some form of compensation for all 18-B attorneys (County Law, § 722-b). In addition, in 1966, a Bar Association plan, adopted in accordance with section 722 of the County Law, spelled out further details with respect to such payments. In particular, the plan directed that applications for compensation payments, initially approved by the trial court, be finally approved, disapproved or modified by the Presiding Justice of the appropriate Appellate Division (see People v Perry, 27 AD2d 154).
Accordingly, a primary query might be as to why a Trial Judge should give more than perfunctory perusal to an 18-B attorney’s sworn, detailed fee statement when it has long been the policy for ultimate review by, at least, administrative and legal specialists appointed by the Presiding Justice. Moreover, the question would appear especially pertinent since it is standard practice for a trial court to approve — almost pro forma and on trust — an attorney’s representations as to legal services rendered and hours expended prior to trial, concerning which the Trial Judge often knows nothing and cannot easily check.
Nevertheless, as to 18-B operations, at least within the purview of the First Judicial Department, the system now has been materially altered by virtue of an interpretation of a recent, but little noticed, legislative modification to section 722-b of the County Law (L 1978, ch 700, § 1). In fact the change consists merely in the addition of one word, namely, "trial” before "court”. (Apparently, this particular augmentation was even overlooked by McKinney’s Cons Laws of NY, Book 11, County Law, § 722-b, Historical Note, 1978-1979 Pocket Part, p 73.)
The pertinent paragraph of section 722-b reads in its en *426 tirety: "For representation on an appeal, compensation and reimbursement shall be fixed by the appellate court. For all other representation, compensation and reimbursement shall be fixed by the court where judgment of conviction or acquittal or order of dismissal was entered. In extraordinary circumstances the trial court may provide for compensation in excess of the foregoing limits and for payment of compensation and reimbursement for expenses before the completion of the representation” (emphasis supplied).
Based on this singular addition, the Appellate Division, First Department, has taken the position that, since January 1, 1979, the earlier practice has been "superseded”; that "[t]he responsibility of passing on the compensation of counsel is at last with the Trial Judge, where it properly belongs”; that only the Trial Judge will now approve, disapprove or modify 18-B attorneys’ "Activity Forms” for payments of all types, except for representation on appeal; and that there will be no further or additional review by the Presiding Justice (but see dicta in Matter of Werfel v Agresta, 36 NY2d 624, 627).
This significant change, if it does not, in fact, cast the trial court (or the court of case disposition) in the roles of "Grand Inquisitor” and "Super Sleuth”, at least, places upon the conscientious jurist the additional burden of insuring the propriety and integrity of the entire 18-B program.
With these augmented functions and duties in mind, I could not ignore the somewhat surprising occurrence (at least, to me) of an attorney, unknown to the court, filing the instant application for compensation. In fact, I was reminded of the comment of a former brother of the Bench, Mr. Justice Leon Polsky, when he so aptly noted, even in 1974, that "[o]ver 5,000 claims for compensation are filed each year by assigned counsel and obviously the court cannot perform an in-depth audit of each voucher submitted by counsel. To a large extent the court must rely upon the integrity of the attorneys filing claims for compensation” (Matter of Attorney for Compensation Under Art. 18-B of the County Law, 78 Misc 2d 265, 266). Admittedly, this reliance is seldom misplaced, but the claim of one attorney for a fee for services performed by another requires, at least, further inquiry.
An attorney who appears in a Supreme Court Trial Part "ready for trial” is seldom interrogated with respect to his status as counsel in the litigation. At the most, the court may inquire whether his representation is private, 18-B or Legal *427 Aid. The fact that he is not the originally assigned 18-B attorney (or that he is an 18-B attorney not authorized to try Supreme Court cases) would not come to light (if ever) until a compensation voucher is submitted in the name of another. At that point, however, it is too late to protect against any problems that could have arisen by virtue of this dual representation. The simple answer is that this apparently prevalent practice by 18-B attorneys should be terminated forthwith.
The potential risks of such joint, but undisclosed, representation to the client, to the court and to the assigned counsel plan are multiple.
Initially, although the indigent defendant to whom 18-B counsel is assigned by a rotation system does not have a choice of attorneys, he has the absolute right under the program to have the attorney who interviewed him, who investigated his case and who prepared his case for trial, also try his case. The confidence, built up by the defendant over weeks or months, in the attorney who has undertaken the representation and who hopefully has readied the case for courtroom combat, should not be dissipated by caling in another lawyer — no matter how skilled — to conduct the actual trial. In actuality, the attorney who represented the present defendant at trial was also a long-time member of the 18-B Supreme Court panel. However, if such subletting of legal assignments was freely permitted, what guarantee would any defendant have of adequate trial representation? A defendant’s liberty and welfare could well hang on the momentary whim of his assigned counsel as to who he might choose as trial attorney.
One of the basic and most important functions of the 18-B plan is to screen lawyer-applicants. Before being added to any approved list, they are carefully interviewed and investigated with a view to selecting those attorneys who are fully competent to handle particular types of criminal matters. Thereafter, panelists are selected from the lists by a fair, impartial, orderly and co-ordinated rotation method.
If the lawyer assigned is allowed, without further scrutiny, to "hire” trial counsel of his own choosing, then the prime basis for the existence of the various panels would be effectively nullified. There would be no requirement that trial counsel be selected from approved 18-B lists or that such trial counsel even possess the ability or experience to try a criminal case. An informed judgment with respect to legal compe *428 tence would no longer be for Bar Association screening comittees, but for each individual attorney.
Furthermore, and perhaps even more significant from the court’s viewpoint, a convicted defendant, under such circumstances, might possibly seek a reversal on Sixth Amendment grounds in that he either was misrepresented at trial or was inadequately represented by trial counsel. Such unnecessary risks have no proper place in our judicial system.
In addition, "[pjrior to the enactment of article 18-B, it was seen as the obligation of attorneys to represent indigent defendants without any compensation. Article 18-B sought to ameliorate what to some seemed an unfair burden upon those attorneys who would accept assignments” (People v Washington, 83 Misc 2d 807, 809). The assigned counsel plan took on that burden with a commendably competent legal cadre dedicated more to public service than to public funds.
Accordingly, while no one has gotten wealthy by virtue of 18-B assignments (especially before the recent increase in compensation), such representation has usually been a welcome and invigorating supplement to a more sporadic criminal clientele. In fact, it might be said, that 18-B assignments are even eagerly awaited and sought, if not for monetary recompense, then for interest and added trial experience. The impartial, computerized rotation system of assignments has been eminently successful in providing all qualified lawyers with a fair share of publicly funded representations. It should not be compromised further by a private appointment method which might afford particular attorneys chances for compensation well beyond those which could be acquired by them in their normal rotation order.
Furthermore, not only do such individual appointments smack of basic unfairness to fellow members of the Bar, but they encourage — even necessitate — inaccuracy, if not impropriety, in the submission of vouchers for payment.
Under the plan, the assigned attorney is mandated to submit, under oath, a statement of time expended, services rendered and expenses incurred (County Law, § 722-b). If such charges — especially if a large proportion of such charges— were claimed for unchecked trial work performed by another attorney, at least a part of the information contained in the submitted "Activity Forms” would be pure hearsay. Attorneys —and knowledgeable trial attorneys most of all — should be wary of such hearsay statements, especially when seeking *429 court approval for claims for legal services, which often are supported only by the integrity of counsel. In addition, the court should not have to concern itself at all with any private financial arrangements between respective attorneys.
In the case of People v Burns (28 AD2d 1039), the Appellate Division, Third Department, without further explanation, denied outright a request for an attorney’s fee on the ground alone that the claimant was not assigned pursuant to the provisions of article 18-B of the County Law. No such drastic action is warranted here, and such a result would be manifestly unjust in this case.
Not only are both counsel 18-B approved for Supreme Court cases, but the representation afforded this defendant by the subject trial attorney demonstrated thorough trial preparation, professional competence and abundant experience in the field of criminal law litigation. Moreover, there has long been a close professional relationship between the assigned attorney and the trial counsel in that they share office space and expenses and often "cover” for one another in making court appearances. They are fully aware of each other’s legal capacity and capability.
However, while there may be nothing askew about one 18-B attorney helping out another by securing an adjournment or by answering a calendar call, it would seem plainly unwarranted, based upon the intent of the program (see People v Perry, 27 AD2d 154, 160-161, supra), for one 18-B attorney to make claim for compensation for trial time expended and legal services rendered by another 18-B attorney. The requirements of individual assignment and individual undertaking of such assignment, not only carry out the basic objectives of the assigned counsel plan (see People v Perry, 27 AD2d 154, 160-161, supra), but help insure that indigent defendants will receive the same type of careful, competent and concerned representation that more affluent defendants can pay for themselves.
As to the instant application, since no warning was afforded previously to the Bar with respect to what appears to be a common, but obviously improper, practice, moving counsel and his trial attorney colleague — to whom no bad faith or impropriety may be attributed — should not now be deprived of a fully justified total fee for joint legal services rendered.
In the future, however, this court — and hopefully my brethren of the Bench — will not countenance any such arrange *430 ment and will not condone an 18-B lawyer’s request for compensation which includes legal work done by someone other than the requesting attorney. Under the presently prescribed rules, if an attorney takes on an 18-B assignment, he should plan to provide all of the legal services himself. Any other view would be a disservice to his client, to the court and to the assigned counsel program.
Moreover, if there is to be any change in the rules or the law so as to permit specified dual representation, it must come from the appropriate Appellate Division of the Supreme Court or the Legislature.
For the reasons stated, the present application is signed and approved, but with fair admonition to the Bar.