OPINION OF THE COURT
Budd G. Goodman, J.
By notice of motion dated July 16, 1993, the Director of the Assigned Counsel Plan of the City of New York (hereinafter referred to as the Director) has again requested this court to reconsider, pursuant to Rules of the Chief Administrator of the Courts (22 NYCRR) § 127.2 (b) through (c), its May 12, 1993 determination pursuant to County Law § 722-c of "reasonable compensation” for Hillel Bodek, M.S.W., C.S.W., in People v Toe and People v Hoe, indictments 5615/89 and 2643/91, respectively.[1]
HISTORICAL BACKGROUND
On May 12, 1993, Mr. Bodek submitted to this court the two vouchers in question seeking compensation for the expert services he rendered in the Toe and Hoe cases. Because he sought compensation in excess of $300 in the Toe case, he submitted to this court, along with his voucher, an affidavit that complied with the requirement of section 127.2 (a) of the Rules of the Chief Administrator of the Courts setting forth the nature of the proceeding, the manner in which his time was expended, the necessity therefore, and facts that demonstrated the "extraordinary circumstances” of the case. This court, already fully familiar with the services Mr. Bodek rendered in these two cases and having previously read the extensive report he submitted in the Toe case, reviewed both vouchers and his affidavit with him. Pursuant to its statutory obligation under section 722-c, this court determined that the previously authorized services were material, reasonable and necessary to the defense in the two cases in question, that the services had been rendered and that "extraordinary circumstances” existed in the Toe case that justified compensation to *144 Mr. Bodek in excess of $300. Applying a three-prong test,[2] this court also found Mr. Bodek’s requested compensation to be reasonable given his professional qualifications, the nature and quality of his work in these cases and the circumstances of the cases. This court approved the two claims for compensation (vouchers) Mr. Bodek submitted and directed their payment.
As detailed more fully in this court’s June 16, 1993 decision and order, by written application dated June 4, 1993, the Director previously sought reconsideration by this court of its May 12, 1993 award of compensation of Mr. Bodek in these two cases at an hourly rate in excess of the amount recommended in AO 73/92 and in the ACP Fee Guidelines.[3] This court granted reconsideration and, upon reconsideration, declined to modify its determination of "reasonable compensation” for Mr. Bodek in these two cases.
Conspicuously absent from her current application is the *145 fact that, by notice of appeal dated June 21, 1993, filed with the clerk of this court and sent to this court and to Mr. Bodek, the Director took an appeal of this court’s June 16, 1993 decision and order. The Director named Mr. Bodek as the respondent in that appeal. By letter dated June 24, 1993, a copy of which was served on this court, Mr. Bodek wrote to the Director’s attorney properly indicating that the notice of appeal was, "inappropriate for at least four reasons.” Mr. Bodek concluded by asking counsel to, "review this matter and remedy this situation by Tuesday, June 29, 1993, by withdrawal of the notice of appeal or by removing me as a respondent and substituting a proper respondent, if there is one, in this appeal.”
Rather than withdraw that notice of appeal, on June 25, 1993, counsel then sent a second notice of appeal, identical to the first, except for the addition of a civil index number. Mr. Bodek again wrote to counsel, supplying a copy of his letter to this court, renewing his prior request of Corporation Counsel to withdraw its inappropriate notice of appeal. This court has not received any indication that either of the Director’s notices of appeal have been withdrawn. This court agrees with Mr. Bodek’s analysis, relying on Matter of Werfel v Agresta (36 NY2d 624, 626 [1975]), that these two notices of appeal do not lie in these criminal cases. This court finds such notices of appeal to be a nullity and that no stay of this court’s June 16, 1993 order exists pursuant to CPLR 5519 (a) (1).
THE INSTANT APPLICATION
The Director’s current application for further reconsideration raises a number of points, most of which are irrelevant to the court’s determination of "reasonable compensation” in the two cases in question. This court will now address them seriatim.

The Extent of Mr. Bodek’s 18-B Compensation

The Director asserts that, "Mr. Bodek consistently earned more than not only the medical experts compensated under [section 722-c], but also the 2500 attorneys assigned pursuant to 18-B.” Accepting the truth of this assertion, it is totally irrelevant to this court’s determination. Judges are required to determine "reasonable compensation” for experts pursuant to section 722-c on a case-by-case basis. Provided that the court determines that the expert’s services were material and necessary, that the defendant was unable to afford such *146 services, that such services were properly provided (and, if the expert’s claim for compensation exceeds $300, that "extraordinary circumstances” existed in the case), the court must then determine "reasonable compensation” for the services rendered and must direct payment of that compensation. Neither the total amount of earnings of an expert for services provided that are compensated pursuant to section 722-c nor the total number of such cases handled by an expert are relevant to a court’s determination of that expert’s compensation in a specific case.

Appeal by the Director to the Administrative Judge

The Director indicates, "I also have the discretion to request appointing judges reconsider the amount charged for certain services. If a judge rejects this request for reconsideration, I may then seek an appeal to the Administrative Judge pursuant to the Rules of the Chief Administrator section 127.2 (c).” This court must stress, once again, that the director’s authority to make requests for reconsideration pursuant to section 127.2 (b) through (c) of the Rules of the Chief Administrator of the Courts is not of the amount charged by an attorney or expert. Rather, it is a request to a court to reconsider its judicial determination of compensation for that attorney or expert. Any disagreement by the Director about a determination of "reasonable compensation” approved by a Judge does not lie between the Director and the attorney or expert involved, who may request whatever compensation he or she desires. Rather, the Director’s disagreement is with the Judge who determined the amount of compensation and, in the case of experts, directed its payment.
The Director apparently misunderstands the plain meaning of section 127.2 (b) of the Rules of the Chief Administrator of the Courts. That rule provides that the Director’s application, "may be reconsidered by the trial judge in consultation with the administrative judge” (emphasis supplied). It does not, in any manner, require consultation by the Trial Judge with the Administrative Judge and does not provide for appeal to the Administrative Judge of the Trial Judge’s ruling.[4]
*147 It is noteworthy that, contrasted with the fixing of compensation for attorneys pursuant to section 722-b, where the trial court must "fix” compensation and reimbursement and, "may provide for compensation in excess of the foregoing limits and for payment of compensation and reimbursement for expenses before the completion of the representation”, in the case of experts, the trial court must, inter alia, make a judicial determination of whether expert services are necessary to the defense of the case and, if so, the nature and extent that such services are necessary. This judicial determination is of constitutional proportions, requiring the court to determine whether a defendant’s right to effective representation requires expert services in addition to the services of counsel. (See, Ake v Oklahoma, 470 US 68 [1985].) The court’s failure to authorize needed expert services could well constitute reversible error. The court must then make a judicial determination of "reasonable compensation” for the expert.[5] This is in contrast to the court’s administrative role in fixing compensation for attorneys pursuant to section 722-b based on the hourly rate established by the Legislature and within the statutory maxima established for representation in various types of proceedings (except in cases where "extraordinary circumstances” exist). Finally, whereas the court, in the exercise of an administrative function, merely "fixes” compensation and reimbursement for attorneys, in the case of experts, pursuant to section 722-c, it must issue a judicial order, as part of the underlying *148 criminal case, directing payment of compensation for expert services.
These judicial determinations (that the services of an expert are necessary, the nature and extent to which such expert services are necessary, what constitutes "reasonable compensation” to the expert in a given case, be it extraordinary or not, and directing payment of "reasonable compensation” to the expert) which are an essential part of the adjudicative role of a Judge presiding over a criminal case, are not reviewable by Administrative Judges. (See generally, Balogh v H.R.B. Caterers, 88 AD2d 136, 141-144 [2d Dept 1982, Titone, J.]; People v Little, NYLJ, Apr. 21, 1982, at 26, col 1 [Sup Ct, NY County 1982, McQuillan, J.].)

Degree of Specificity in Orders of Appointment

The Director complains that the orders appointing Mr. Bodek do not specify or indicate the services he is to supply. The orders in question are issued on the form provided by the City of New York. The orders authorize the provision of expert services of a particular nature and/or by a particular individual. Before this court signs such an order, there is a discussion with counsel regarding the nature of the services requested and of the necessity for such services. In virtually all cases, this is accomplished at a bench conference. The only time a stenographic record is made of such proceedings or a formal written application is required by this court is when this court does not believe that the expert services requested are necessary and the application is denied. A stenographic and written record is made in those cases so that the application, the court’s denial of that application and the reasons therefor, are preserved for appellate review. Otherwise, the record of the application by defense counsel, the finding by the court that the requested services are material, reasonable and necessary to the defense of the case and that such services are authorized pursuant to section 722-c consists of the court’s order appointing the expert and authorizing expert services pursuant to section 722-c. There is no requirement that each particular aspect of the services to be provided be set forth in writing on the order. The degree of specificity in an order appointing an expert is a matter for judicial determination. Additionally, section 722-c expressly provides, "[t]he court upon a finding that timely procurement of necessary services could not await prior authorization may authorize the services nunc pro tunc.”
*149 The fact that these orders do not specify each and every activity authorized to be undertaken by the expert in the two orders of appointment in question is irrelevant. By approving payment of "reasonable compensation” for an expert’s services, this court has made the required judicial determination that the services set forth on the voucher in question were material, reasonable and necessary, were authorized by this court and that adequate proof was provided to this court that the services were rendered.
This court notes that the manner in which the orders appointing Mr. Bodek in the two cases in question were worded, with his name and profession, are similar to all of the other orders for experts signed by this court, each of which specifies the category of services of a particular nature to be provided and/or the name of a particular expert who will provide those services. The only complaint this court has ever received about the lack of specificity in such orders (and, which after conferring with several judicial colleagues, this court has learned that they have never received) is in these two cases.

Lack of Director’s Access to Bodek’s Report

The Director asserts, "the only evidence of such a report [the evaluation report, the preparation of which is part of the professional services for which Mr. Bodek sought and was granted compensation in the Toe case] is a statement in Mr. Bodek’s voucher, since no report was contained in the official court file that I reviewed.”
The reason Mr. Bodek’s report was not contained in the public court file the Director reviewed is because it is a confidential document that, as a matter of law, should not be placed in the public court file. CPL 390.50 provides that presentence and prepleading evaluations are, "confidential and may not be made available to any person or public or private agency except where specifically required or permitted by statute or upon specific authorization of the court.” There is no statutory basis to provide such reports to the Director. Nor, once this court has indicated that it has reviewed the report, is there any basis for this court to grant an application by the Director to permit her to review it.
The Director’s implication that Mr. Bodek has sought compensation for a report he did not prepare and that this court approved compensation for a report without knowing that one existed, is offensive. Either the Director is asserting, without *150 any justification whatsoever, that Mr. Bodek filed a perjurious affidavit with this court when he sought compensation for preparation of a comprehensive evaluation report or, without any basis therefor, is calling into question the bona tides of this court’s finding that Mr. Bodek’s preparation of an evaluation report, one of the professional services for which he sought compensation in the Toe case and for which this court awarded him compensation, was material, necessary and reasonable in that case and was performed.

Bodek’s Qualifications as an Expert

The Director asserts, "Mr. Bodek has indicated on the voucher [in the Hoe case] that he has reviewed prison health records, notwithstanding the fact that he is a forensic social worker and not a physician * * * This office has received no other documentation with respect to this claim to indicate that Mr. Bodek was in any way qualified to perform a [sic] such a medical review * * * This office has received no documentation indicating why Mr. Bodek reviewed Mr. Hoe’s medical records or whether Mr. Bodek as a social worker was qualified to conduct such a review[.]”
Here, the Director attempts to extend her claimed authority (which she apparently believes includes determining the content of court orders, asserting a right to see confidential reports so that she can review judicial determinations that those reports were necessary and were prepared, demanding the basis for and reviewing Judges’ determinations of necessity and reasonableness of expert services and of specialized evaluations and/or tests, and reviewing court orders determining that in-patient evaluations are necessary in specific cases, etc.) to include review of Trial Judges’ determinations of whether an individual is properly qualified as an expert.
As noted in this court’s June 16, 1993 prior decision and order, at footnote 6, " '[c]linical social work practice is based on knowledge and theory of: biological, psychological and social development * * * the causes and effects of physical illness and disability * * * differential assessment and diagnosis of bio-psycho-social dysfunction and the differential planning and implementation of treatment of physical, emotional and mental disorders and habilitation of developmental disabilities, with particular attention to the person existing as a combination of biological, psychological and social elements in his or *151 her environment.’ ” (Matter of Director of Assigned Counsel Plan of City of N. Y. [Bodek], 159 Misc 2d, at 114-115, supra.) Thus, a properly trained clinical social worker is competent to review and interpret medical records. Mr. Bodek has testified before this court and, to this court’s personal knowledge, before other courts, as such an expert.
The determination of whether an individual is an expert is a judicial determination to be made by the trial court, not by the Director. This court’s orders appointing and later directing payment of "reasonable compensation” to Mr. Bodek for these expert services represent this court’s determination that he was qualified to provide the expert services in question. An expert need not prove separately to the Director that he or she is qualified as an expert and this court need not provide the Director with the basis for its judicial determination that a person is qualified as an expert so she can review administratively the propriety of that judicial determination.
It is quite important to note that, although in addressing AO 73/92 and the AGP Fee Guidelines in its June 16, 1993 decision and order, this court pointed out that there are different, well-established and well-recognized levels of certified social workers, a factor which those guidelines fail to account for, and set forth the method which this court used to make a determination of the first prong of its over-all determination of "reasonable compensation” for a social work expert, this should not be misinterpreted as this court’s endorsement of the use of all certified social workers as experts. To the contrary, although it is well established that the test of whether a particular individual is an expert does not rest solely on their professional discipline or license but, rather, on their degree of knowledge and experience in relation to a particular area of expertise, this court believes that in appointing an expert or authorizing an individual to provide expert services (as contrasted with ruling on the qualifications of an individual who is called to testify as an expert, to so testify), a Judge should apply the relevant standards of the profession involved.
With regard to social workers, in ruling on the appointment of a social worker to provide a forensic clinical evaluation of a defendant, this court applies the applicable standards of the National Federation of Societies for Clinical Social Work, which have been also adopted by the New York State Society *152 for Clinical Social Work.[6] Those standards define which social workers are deemed qualified by their profession to provide independently forensic clinical social work services.
For a certified social worker who does not have the Board Certified Diplómate credential, this court would, with great caution, tend to appoint or authorize to provide expert forensic clinical evaluation services a certified social worker who has the "R” endorsement on their license[7] and who has the *153 requisite postgraduate training and supervised clinical experience in providing forensic mental health/developmental disabilities evaluations and who can demonstrate appropriate familiarity with the applicable legal procedure, statutes, rules, regulations, case law and rules of evidence relating to the clinical-legal issues the social worker is being called upon to address. Absent special circumstances, this court would strongly tend toward denying applications for appointment of certified social workers with lesser credentials than the Board Certified Diplómate or the "R” endorsement on their license to conduct forensic clinical evaluations of criminal defendants.

Adequacy of Bodek’s Voucher and Affidavit

The Director asserts that Mr. Bodek failed to demonstrate, "that the circumstances of Mr. Toe’s matter were 'extraordinary.’ ” That assertion is belied by Mr. Bodek’s affidavit, a copy of which is attached to her application, which states, in pertinent part, "[T]he forensic mental health assessment that I was asked to perform involved several issues — the issue of whether or not defendant was competent to proceed, in accordance with the criteria set forth in CPL Article 730; the issue of whether or not the defendant was dangerous; the issue of appropriate disposition for him in light of his severe chronic mental illness; and an assessment of his ability to function on probation. The evaluation in this case required examination of the defendant, including the administration of a battery of psychodiognostic tests to him, conducted on a longitudinal basis, for a total of more than 25 hours, obtaining and reviewing various records regarding the defendant, reviewing prior mental health evaluations of the defendant, and reviewing a variety of court documents relating to the instant case. In addition, an extensive forensic mental health evaluation report was prepared and submitted to the court and counsel. Additionally, work was done to assure that defendant would obtain needed mental health services after being sentenced * * * Your affiant respectfully submits that the services rendered by him in this case in order to properly evaluate the defendant and properly assist in the defense of this case, required more than a basic forensic mental health evaluation, given the complexity of the case and the nature of the multiple questions posed to him for the purpose of his *154 consultative opinion and, as such, were of an ‘extraordinary’ nature” (emphasis supplied).
Mr. Bodek’s affidavit and voucher fully meet the requirements of section 127.2 (a) of the Rules of the Chief Administrator of the Courts and the requirements of section 722-c. His voucher and affidavit, coupled with this court’s personal knowledge of his work in the Toe case, more than amply allowed this court to make a judicial determination that the expert services he provided were reasonable, necessary and material, that the services were performed and that the case presented "extraordinary circumstances” that justified the awarding of compensation to Mr. Bodek in excess of $300. Contrary to the Director’s assertion, Mr. Bodek’s affidavit also documented the postsentence expert services he provided which had been approved by this court, in advance.[8] It must be noted that the voucher and affidavit in support are submitted to the court, for its judicial review and judicial determination of "reasonable compensation”, not for the purpose of permitting the Director to sit in appellate review of Trial Judges’ judicial determinations.

Court Clinic Salaries

The Director asserts that the average hourly salary rate for psychiatrists employed at the court clinic is $49 and the average hourly salary rate for psychologists employed at the court clinic is $24. Apparently, she quotes these figures in order to argue that Mr. Bodek’s hourly rate approved by this court of $100 is unreasonable. However, these figures only serve to provide further justification of this court’s May 12, 1993 setting of "reasonable compensation” for Mr. Bodek and of this court’s June 16, 1993 decision and order reaffirming, on reconsideration, its May 12, 1993 determination. In this regard, the AGP Fee Guidelines recommend an hourly rate of *155 $125 for psychiatrists, 2.55 times the $49 average hourly salary rate of the same psychiatrist at the court clinic, and an hourly rate of $90 for psychologists, 3.75 times the $24 average hourly salary rate of the same psychologist at the court clinic. The disparity between hourly salary rates and hourly rates of compensation for self-employed persons makes sense, since self-employed persons must pay their own fringe benefits and costs of their work which expenditures are paid for them directly by the City when those professionals are functioning as salaried City employees.
It is noteworthy that many Judges of this court, including its past and present Administrative Judges, the Honorable Peter McQuillan and the Honorable Joan Carey, respectively, have approved compensation for Mr. Bodek that substantially exceeds the $45 hourly rate recommended in AO 73/92 and in the ACP Fee Guidelines, for over a decade and, for approximately the past five years, at the rate of $100 per hour. The Director would be well advised to consider carefully and to rely on the collective wisdom of so many Judges who are intimately familiar with Mr. Bodek’s professional qualifications and with the extraordinary dedication, thoroughness, professionalism, knowledge and skill with which he carries out his assigned functions, often in difficult and complex cases, circumstances with which she has no familiarity, before criticizing, directly and by implication, the propriety of these Judges’ judicial determinations.
CONCLUSION
The Director’s application for further reconsideration has stated nothing that causes this court to modify either its May 12, 1993 award of "reasonable compensation” to Mr. Bodek in these two cases or its June 16, 1993 decision and order that determined the Director’s original (June 4, 1993) application for reconsideration. The only relevant information she has supplied in the instant application has further reinforced this court’s conviction of the propriety of its prior determinations in these cases.
What is most troubling about this matter is the Director’s apparent failure to appreciate the difference between the role of Judges in determining and directing payment of "reasonable compensation” pursuant to section 722-c and her limited ministerial role in the processing of those awards for compensation. The Director’s application reflects an erroneous view *156 on her part that she can dictate to Judges how they will make judicial determinations and carry out their responsibilities under section 722-c and her apparent assumption that she has the authority to sit in administrative review of judicial determinations made pursuant to section 722-c. The Director’s misconception of her role begins at the earliest stage of the process, where she asserts wrongly that experts submit their vouchers to her. Experts seeking compensation submit such vouchers, under oath, to the court which appointed them. The court must then determine: (1) whether the services were authorized, (2) whether the services were material, necessary and reasonable, (3) whether the services were provided, (4) whether "extraordinary circumstances” exist that permit compensation in excess of $300, and (5) "reasonable compensation” for the expert. The court must then direct payment of this "reasonable compensation. ”
Before approving a claim for compensation, Judges are obligated to require an expert to justify to their satisfaction each of these first four elements so that they may make a judicial determination as to the fifth. Usually, because of Trial Judges’ familiarity with the cases before them, their personal knowledge of the services rendered in the case coupled with the sworn voucher and accompanying affidavit, if any, are sufficient for this purpose. In cases before this court where these have not been sufficient, this court has sent vouchers back to various experts seeking clarification of their submissions so that its judicial determinations of "reasonable compensation” are based on appropriate and adequate information. Determinations by Judges in this regard are entitled to the presumption of regularity, that Judges in making these judicial determinations have assured themselves that they have appropriate and adequate facts before them to make such determinations in a proper manner.
Although the Director may request a court to reconsider its determination of "reasonable compensation” in a given case and may suggest to a Judge that further inquiry by the court of the expert about the services in question is warranted, it is for the court to determine whether such additional inquiry is necessary and to make such inquiry as it deems appropriate. The Director may not dictate to the court how to proceed to determine "reasonable compensation” and may not require an expert to provide material that the court has not required in order to support his or her claim for compensation, the *157 determination of which is a judicial one, made by Judges, not municipal administrators.
Judges and the Director are partners, each of whom has a particular, well-defined role, in the important effort to assure the effective administration of justice to indigent defendants. This court welcomes input from the Director in any case where she has a reasonable question about the court’s determination of "reasonable compensation”. However, the Legislature has clearly vested solely in the Judge assigning the expert in question the authority to make determinations of "reasonable compensation”. These judicial determinations by trial courts are not reviewable either by appeal, by proceeding pursuant to CPLR article 78, or by court administration. (See, Matter of Werfel v Agresta, 36 NY2d 624 [1975], supra; Matter of Montgomery v Muller, 176 AD2d 29 [3d Dept 1992]; Matter of Kindlon v County of Rensselaer, 158 AD2d 178 [3d Dept 1990]; Matter of Byrnes v County of Monroe, 128 Misc 2d 700 [Rochester City Ct 1985], affd 131 Misc 2d 129 [Monroe County Ct 1986], revd on other grounds 122 AD2d 549 [4th Dept 1986], affd on appeal of further proceedings below 129 AD2d 229 [4th Dept 1987]; Matter of Fisher v Schenck, 39 AD2d 813 [3d Dept 1972]; People v Elliot, 98 Misc 2d 424, 425-426 [Sup Ct, NY County 1979].) Clearly, they are not reviewable by the Director.
Section 127.2 (b) through (c) of the Rules of the Chief Administrator of the Courts provides a mechanism whereby a municipality that has a good-faith objection to a determination of "reasonable compensation” and to a direction for payment of that compensation to an expert pursuant to section 722-c, can request the court to review that determination. That rule is not an invitation for the Director to file multiple applications, utilizing data almost all of which is irrelevant to the determination of "reasonable compensation” in a particular case, which determination is the sole and limited issue before the court and the sole issue that the court may consider on the Director’s application for reconsideration, for the purpose of delaying payment of "reasonable compensation” to an expert and for the purposes of attempting to conduct an unjustified investigation of the expert and an impermissible administrative review of judicial decision making.
Upon careful reconsideration and detailed review of all of the affidavits and exhibits in support of the Director’s instant application for further reconsideration, the court files in these two cases, the prior decision and order of this court dated *158 June 16, 1993, and the materials relating to the Director’s improper notices of appeal of this court’s June 16, 1993 decision and order in these cases, for the reasons set forth above and in its June 16, 1993 determination of the Director’s original (June 4, 1993) application for reconsideration, this court adheres to its May 12, 1993 determination of f'reasonable compensation” to Mr. Bodek for expert services he rendered under indictments 5615/89 and 2643/91. This court orders and directs that the Director shall, within 72 hours of receipt of this decision and order by the Assigned Counsel Plan of the City of New York, under penalty of contempt should she fail to do so, have processed for payment by the City of New York the vouchers for expert services rendered by Mr. Bodek and approved by this court relating to indictments 5615/89 and 2643/91, which are the subject of the instant application, in the amounts of $5,200 and $200, respectively, and shall then promptly notify this court, personally, that she has complied with this order.

. Because the issues in their cases which are relevant to this opinion are of a medical and/or psychiatric nature these defendants are referred to using the pseudonyms Toe and Hoe, in order to protect their privacy and to safeguard against any potential breach of confidentiality.

. Lest this court’s June 16, 1993 decision and order be misinterpreted and improperly portrayed by the Director as indicating a view by this court that the hourly rate of expert compensation should depend solely, or even primarily, on the profession of the expert, her attention is called to the fact that that decision and order stated clearly that, "the Legislature intelligently chose to vest in the courts, which are in the best position to assess the nature and extent of the expert services in a given case, the responsibility and authority for determining 'reasonable compensation’ for such services on an expert-by-expert, case-by-case basis * * * The court’s assessment is not simplistically restricted to the discipline or license of the expert.” (Matter of Director of Assigned Counsel Plan of City of N. Y. [Bodek], 159 Misc 2d 109, 122 [emphasis supplied].)
In that decision, this court specifically rejected the Director’s request to have "reasonable compensation" determined solely on the basis of rates established for the expert’s professional discipline, as set forth in Administrative Order 73/92 of the Chief Administrator of the Courts (hereinafter referred to as AO 73/92) and in the Assigned Counsel Plan Fee Guidelines (hereinafter referred to as ACP Fee Guidelines) and applied a three-pronged test for determining "reasonable compensation” pursuant to section 722-c. This court held, "Judges have a statutory obligation to determine reasonable compensation of experts they assign pursuant to section 722-c. This determination should be based on the reasonable value of the services provided, taking into account, (1) the level of skill, training, experience, talent and expertise of the expert, (2) the nature, extent and quality of the necessary services provided, and (3) the complexity of the issues involved which were the subject of the expert services.” (Supra, at 123-124.)

. Assuming, arguendo, that AO 73/92, issued on February 6, 1992, and its progeny, the ACP Fee Guidelines, issued in 1993, are binding on Trial Judges, they would not be applicable in the two cases at bar where Mr. Bodek was appointed in 1991, prior to the time AO 73/92 or the ACP Fee Guidelines existed.

. As this court noted in its June 16, 1993 decision and order, "[t]he language of section 722-c is clear and unambiguous. The determination of 'reasonable compensation’ for an expert appointed in accordance with section 722-c, which includes setting the hourly rate for the expert, deciding the total to be paid and ruling whether 'extraordinary circumstances’ exist in the case that permit a total payment to the expert in excess of the *147 statutory maximum of $300, is a judicial determination to be made by the Judge assigning the expert. There is no statutory authority for promulgation of any regulation or administrative rule which would control the judicial determination by Judges of 'reasonable compensation’ under section 722-c. The Legislature has clearly vested solely in the Judge assigning the expert in question the authority to make this determination * * * These judicial determinations by trial courts are not reviewable either by appeal or by proceeding pursuant to CPLR article 78 [citations and footnotes omitted].” (Matter of Director of Assigned Counsel Plan of City of N. Y. [Bodek], 159 Misc 2d, at 111-112, supra.)

. In some cases, the court is called upon by counsel and the expert to determine the rate of compensation it will provide to the proposed expert, conditioned, of course, on a subsequent judicial review and approval of the nature, quality, materiality, necessity and reasonableness of the expert services provided, prior to the expert agreeing to accept assignment. This is becoming increasingly frequent because experts want some guarantee from the courts that they will be adequately compensated before proceeding to accept assignments pursuant to section 722-c. Such judicial determinations may well affect the ability of a defendant to obtain appropriate expert assistance.

. Those standards state, in pertinent part,
"[a] forensic clinical social worker is an individual who: 1) has a Master’s or Doctoral Degree from an accredited school of social work and whose graduate level education has included a clinical core curriculum and a field practicum in a clinical setting in order to integrate theory with practice, 2) is a Board Certified Diplómate of the American Board of Examiners in Clinical Social Work, 3) has a minimum of five years supervised clinical work beyond the Master’s Degree, at least one year of which has been full-time supervised experience, or its part-time equivalent, during which the clinical social worker provided primarily forensic mental health/developmental disabilities services and 4) has completed at least one-hundred hours of postgraduate continuing education in clinical social work within the past five years.
"The forensic clinical social worker’s postgraduate training and supervised clinical experience should include the performance of forensic mental health/developmental disabilities evaluations under supervision and should include supervised clinical experience relevant to addressing clinical concerns arising in relation to legal issues. The forensic clinical social worker should be familiar with the applicable legal procedure, statutes, rules, regulations, case law and rules of evidence relating to the clinical-legal issues the social worker is being called upon to address.”

. The distinction between the Board Certified Diplómate credential and the "R” endorsement on a certified social worker’s license is not insubstantial. The "R” endorsement on a clinical social worker’s license is earned on the basis of six years of postgraduate supervised experience in providing psychotherapeutic services, one of several areas of clinical social work practice. Other than having earned a graduate degree in social work, there is no requirement that their graduate training include any amount of coursework related to clinical practice. (See, 8 NYCRR 74.5 [b], [d].) On the other hand, in order to qualify for the Board Certified Diplómate credential, a social worker must have completed a graduate degree in social work, which includes specific coursework related to clinical practice and supervised direct clinical practice, or its postgraduate equivalent; after meeting the previous requirements, have provided at least 7,500 additional hours of clinical social work services, over not less than five years, a minimum of 3,000 hours of which must have been supervised; must hold a license at the highest level of social work practice in each jurisdiction where he or she practices; and, must obtain a passing score on the qualifying examination for board certification which measures competence in the multiple domains of clinical social work practice, not only psychotherapy. In addition, in order to maintain board certification, a clinical social worker must complete 20 hours annually of continuing professional education. (American Board of *153 Examiners in Clinical Social Work — 1993 Diplómate Directory, at iii-vi, insert [Am Bd of Examiners in Clinical Social Work 19921.)

. This court noted that after defendant Toe was sentenced, Mr. Bodek provided services authorized by this court at the request of defense counsel to assure defendant’s rapid transfer to State custody and to follow up to make sure that he received continued mental health services in prison. At the time he presented his voucher to this court for approval, Mr. Bodek informed this court that his provision of these services consumed 2 Yz hours of his time expended after the May 8, 1992 date of sentence until July 22, 1992, which this court found to be reasonable and necessary. The Director asserts that since these services were provided after defendant was sentenced, they should not be compensated pursuant to section 722-c. This court finds that these postsentence services were reasonable and necessary services related to this case and are compensable under section 722-c.