**Jane M. MATHISON, Plaintiff,**

v.

**The Honorable Gordon Speights YOUNG, Juvenile Court Judge of the Iowa District Court for Story County, Defendant.**

**Nos. 67648, 68578, 68583 and 68584.**

Supreme Court of Iowa.

April 20, 1983.

McCORMICK, J.

The question here concerns the legal standard for determining reasonable compensation for an attorney appointed as counsel for indigent parents or children in juvenile cases. Plaintiff Jane M. Mathison brought these consolidated certiorari actions to challenge fee orders entered for her services in four juvenile proceedings by defendant District Associate Judge Gordon Speights Young. We find that defendant employed an incorrect legal standard in the orders and therefore sustain the writs and remand the cases for a new determination of fees.

Section 232.141(1) of the Iowa Code (1981) provides that certain specified expenses "upon certification of the judge or upon such other authorization as provided by law are a charge upon the county in which the proceedings are held . . ." subject to a limitation not applicable here. "Reasonable compensation for an attorney appointed by the court to serve as counsel or guardian ad litem" is one of the specified expenses. § 232.141(1)(d). The dispute here relates to the legal standard for determining reasonable compensation.

Plaintiff served as court-appointed counsel for parents or children in four juvenile proceedings. After her services in each proceeding were complete, she submitted a claim for fees including an itemized statement. She requested compensation at the rate of $60 per hour. She served notice of her claims on the county attorney, and the State did not resist her claims. Pursuant to district rule, the claims were reviewed by a panel of three judges. In each instance the panel recommended to defendant that he allow a fee lower than the amount claimed but did not say what the fee should be. Although defendant found the services were reasonably necessary and, with minor exceptions, that the time claimed was compensable, the court awarded fees substantially less than the amounts claimed. One claim was allowed at $40 an hour, a second at $42.50 an hour, and the other two at $50 an hour.

Plaintiff filed objections to the reduction of fees in each instance. A hearing was held concerning one of the claims. She offered evidence that law office overhead in the community averaged $38 an hour and that the ordinary and customary charge for juvenile court services in the community was $60 per hour. In his order overruling plaintiff's objection, defendant said he determined the fee in accordance with the standard in *Parrish v. Denato,* 262 N.W.2d 281 (Iowa 1978), and *Soldat v. Iowa District Court for Emmet County,* 283 N.W.2d 497 (Iowa 1979). Specifically the judge acknowledged having reduced the fee to take into account the certainty of payment from the public treasury and the duty of an attorney to represent the poor. In overruling plaintiff's objections to the other three orders, the judge said he discounted the fees on the same basis in those proceedings. In the present certiorari actions, plaintiff contends the judge erred in reducing the fees on those grounds.

In *Hulse v. Wifvat,* 306 N.W.2d 707, 709 (Iowa 1981), this court observed that two elements inhere in any standard providing for reasonable attorney fees: "The services must have been reasonably necessary and the valuation must be reasonable in amount." The present controversy concerns only the second element, the reasonableness of amount.

■ Plaintiff contends the court applied an incorrect legal standard and abused its discretion in determining a reasonable amount for her fees. These are separate issues. Ascertaining the correct legal standard is an issue of law. Once the correct legal standard is ascertained, a court has broad discretion in applying it. *Id.* If discretion alone is involved, we reverse only if it "was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Buck,* 275 N.W.2d 194, 195 (Iowa 1979). We will address these issues separately.

I. *The legal standard.* The legal standard for determining reasonable compensation for court-appointed attorneys in juvenile cases has not previously been decided.

Reasonable compensation for such services was first mandated by this court's decision in *Ferguson v. Pottawattamie County,* 224 Iowa 516, 278 N.W. 223 (1938). It has been mandated by statute since 1966. *See* Iowa Code § 232.52 (1966).

The parties in the present case each read the caselaw interpreting statutes governing court-appointment fees in criminal cases as controlling. We believe those cases shed light on the problem but are not determinative.

Section 775.5 of the Iowa Code (1977) provided for "reasonable compensation" in criminal case court appointments. In *Woodbury County v. Anderson,* 164 N.W.2d 129, 132 (Iowa 1969), this court put a judicial gloss on that statute by holding it did not purport to provide full compensation or the same fee as would be charged to nonindigent clients. The court noted the statute had been amended to remove provisions providing fees in set amounts in an effort to "alleviate the financial burden on individual lawyers in light of the developing law of an indigent's right to counsel under recent decisions of the United States Supreme Court and this court." *Id.*

Section 815.7 of the Iowa Code (1979) supplanted section 775.5. It included language defining reasonable compensation as "the ordinary and customary charges for like services in the community...." We held in *Hulse,* 306 N.W.2d at 711, that in making the change the legislature intended that "reasonable compensation for court-appointed lawyers be set under the criteria which govern reasonable compensation for other litigation services." Thus section 815.7 provided a legislative definition of reasonable compensation that differed from the previous judicial definition. The court said: "The effect of this change is to make reasonable compensation full compensation. No discount is now required based on an attorney's duty to represent the poor." 306 N.W.2d at 711. Certainty of payment of the fee was recognized as a factor that should be taken into consideration in determining reasonable compensation, along with the other factors discussed in *Parrish,* 262 N.W.2d at 285.

Because section 232.141(1)(d) lacks both the legislative and judicial history of section 815.7, its interpretation is not necessarily dictated by the cases interpreting former section 775.5 or present section 815.7. We believe, however, that the legislative definition of reasonable compensation in section 815.7 is persuasive authority for giving the same interpretation to the legislature's concurrent use of the same term in section 232.141(1)(d). *See State v. Dowell,* 297 N.W.2d 93, 96 (Iowa 1980). We therefore hold that the standard of reasonable compensation under section 232.141(1)(d) is the same as the standard of reasonable compensation in section 815.7 as delineated in *Hulse.*

The State suggests this interpretation overlooks an attorney's ethical obligation to represent the poor and the oppressed. We do not agree. We recognize that the vast majority of lawyers provide gratuitous or substantially discounted services on a daily basis to persons unable to pay regular fees. As the Code of Professional Responsibility notes, however, these services address only part of the need:

> Historically, the need for legal services of those unable to pay reasonable fees has been met in part by lawyers who donated their services or accepted court appointments on behalf of such individuals. The basic responsibility for providing legal services for those unable to pay ultimately rests upon the individual lawyer, and personal involvement in the problems of the disadvantaged can be one of the most rewarding experiences in the life of a lawyer. Every lawyer, regardless of professional prominence or professional workload, should find time to participate in serving the disadvantaged. The rendition of free legal services to those unable to pay reasonable fees continues to be an obligation of each lawyer, but the efforts of individual lawyers are often not enough to meet the need. Thus it has been necessary for the profession to institute additional programs to provide legal services. Accordingly, legal aid offices,

lawyer referral services, and other related programs have been developed, and others will be developed, by the profession. Every lawyer should support all proper efforts to meet this need for legal services.

E.C. 2–27, Iowa Code of Professional Responsibility for Lawyers.

The critical problem of providing legal services to the poor is now being addressed through public as well as private programs. At best, however, the public programs merely alleviate part of the burden borne by the private bar. This court has recognized the magnitude of the task in requesting the organized bar to develop additional programs to provide legal services to the poor in civil cases. Denying lawyers reasonable compensation for mandatory court-appointed services could have a crippling effect on their ability to respond to this need. The same concept is reflected in the ethical consideration relating to obtaining reasonable compensation from private clients: "The legal profession cannot remain a viable force in fulfilling its role in our society unless its members receive adequate compensation for services rendered, and reasonable fees should be charged in appropriate cases to clients able to pay them." *Id.,* E.C. 2–18.

Providing legal services to the poor is no different in principle than providing them with medical and other basic services. The problem is exacerbated by the complexity of modern life as well as by the constitutionally-mandated expansion of the right to legal services in juvenile and penal cases. The bar of this state has a proud tradition of service to the poor. Yet, as the bar, Congress, and the Iowa General Assembly have recognized, the entire need cannot satisfactorily be met by donated services.

We do not believe that in providing for reasonable compensation from the public treasury to attorneys appointed to represent the poor in juvenile cases the legislature purported to demand a subsidy from the private bar. Instead we believe lawyers remain free to determine how and in what cases they will discharge their ethical

obligation to assist the poor. Ample opportunity exists for them to do so outside the field of mandatory court-appointment services. We find that section 232.141(1)(d) does not authorize a discount from otherwise reasonable compensation based on an attorney's duty to help the poor.

We hold that the judge employed an incorrect legal standard in determining plaintiff's compensation. The fees should not have been reduced based on the ethical consideration. Instead the factors listed in *Hulse,* 306 N.W.2d at 711–12, should have been utilized. Those factors are the time necessarily spent, the nature and extent of the services, the penal consequence involved, the difficulty of handling and importance of issue, the responsibilities assumed and results obtained, the standing and experience of the attorney, the customary charge for similar services in the community, and the certainty of payment. *Id.*

Plaintiff contends that certainty of payment should not be relevant. She offered evidence that several Ames lawyers collect nearly 100 percent of the fees they charge to private clients. From this she argues that payment of private fees is not uncertain. In fact she argues public fees are uncertain because, as these cases illustrate, they are not assured until they are allowed. We are not persuaded that the collectibility of fees for private clients is so nearly certain as plaintiff argues, nor do we think uncertainty of amount should be equated with uncertainty of payment. We adhere to our holding in *Hulse.*

Because the judge did not apply the correct legal standard, we sustain the writs of certiorari and remand to permit the fees to be determined anew.

II. *Abuse of discretion.* We find no evidence that the judge abused his discretion in determining the fees. Rather the record shows he made a thorough and conscientious examination of plaintiff's claims and carefully applied what he conceived to be the appropriate legal standard. Our disagreement is with the choice of standard, not with the way in which it was applied.

We do not intimate what the fees should be. We remand to permit the judge to make that determination under the correct standard. In making that determination he is not bound to award the amounts claimed. The claims are based on a rigid hourly rate rather than the characteristics of the services, which vary from case to case. While we recognize the convenience of determining fees based on time alone, that approach is not only simplistic but contrary to our holding in *Hulse* that time expended is only one of the factors to be considered in determining reasonable compensation.

Plaintiff has independently challenged the fee orders on equal protection grounds, asserting she was denied equal protection by the court's application of a different fee standard in juvenile cases than is applicable in criminal cases. In view of our holding, we do not reach the constitutional question.

WRITS SUSTAINED AND CASES REMANDED.

All Justices concur except HARRIS and McGIVERIN, JJ., who dissent.

WOLLE, J., takes no part.

HARRIS, Justice (dissenting).

I dissent for the reasons stated in the dissenting opinion in *Hulse v. Wifvat*, 306 N.W.2d 707, 714–16 (Iowa 1981). I do not think the legislature, in adopting Iowa Code § 232.141(1)(d), intended to make it illegal for the judge to consider a lawyer's obligation to assist the poor when fixing "[r]easonable compensation." I recognize no statute and, prior to the majority holdings here and in *Hulse*, no rule which makes it illegal to give consideration to that long-recognized obligation.

The majority cannot say, and does not say, the fees allowed here were unreasonable. The fees strike me as entirely reasonable and this is all the legislature required them to be.

I would annul the writ.

McGIVERIN, J., joins this dissent.