Douglas V. COONRAD, Plaintiff,

v.

Honorable Peter VAN METRE,
Judge, Defendant.

No. 83–1419.

Supreme Court of Iowa.

Feb. 13, 1985.

**198**

Douglas V. Coonrad, pro se.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., and James C. Bauch, Co. Atty., for defendant.

McGIVERIN, Justice.

Plaintiff Douglas V. Coonrad brings two consolidated certiorari actions to review fee allowances made by the defendant district court under Iowa Code sections 815.7 and 663A.5 (1983) for his services in representing several indigent persons in various unrelated criminal prosecutions and postconviction proceedings. We annul the writs.

The judges of the first judicial district of Iowa maintain a list of attorneys who have expressed their willingness to accept court appointments to represent indigent defendants in criminal cases and indigent applicants in postconviction proceedings. In Black Hawk County, attorneys may voluntarily place their names on a list that is maintained by the court administrator. Mr. Coonrad is an attorney on this list. He

was appointed by the district court to represent persons in four criminal cases and two postconviction actions in Black Hawk County. Upon completion of the cases, he presented to the court his claims for fees in those matters, listing his expenses and the hours spent in research, travel, conferences, and other activities. In each case he requested compensation at the rate of $65 per hour.

District Rule 1 of the first judicial district, which comprises eleven counties in northeast Iowa, pertains to fees for court-appointed attorneys in criminal cases. Its paragraphs four through six read as follows:

4. In fixing the fee the Court shall exercise its independent judgment in determining the extent of reasonably necessary services. *See Hulse v. Wifvat*, 306 N.W.2d 707 (Iowa 1981).

5. The Court shall then determine the compensation to be allowed for all services found to have been reasonably necessary in each case. The compensation shall be the ordinary and customary charges for like services in the community. In determining the compensation the Court shall consider the following: (a) the time necessarily spent; (b) the nature and extent of service; (c) the possible punishment involved; (d) the difficulty of handling and importance of the issues; (e) the responsibility assumed and results obtained; (f) the standing and experience of the attorney in the profession; (g) the customary charges for similar services, and (h) the certainty of payment.

6. As a guideline only, the sum of $40 per hour is established as the average, ordinary, and customary charges for like services in this District. This hourly rate is a composite of the charges for the different services involved in such cases. These differences include, for example, the lower rates ordinarily charged for legal research and briefing and higher rates charged for actual trial time.

Various judges ruled on plaintiff's fee claims. They allowed his expenses and awarded further compensation at the rate

of $40 per hour, except for one case in which $45 per hour was awarded.

Plaintiff objected to these allowances. He sought $65 per hour (plus expenses) as compensation, and requested reconsideration of his claims. He accompanied his requests with several affidavits from local attorneys practicing in criminal defense regarding their usual fees for such work on behalf of non-indigent clients. These fees ranged from $50 to $75 per hour; several of the attorneys stated that their hourly rates might in some cases vary up or down from the rates indicated.

The chief judge of the judicial district ordered defendant judge Peter Van Metre to hear and rule on the requests for reconsideration in all six cases, although Judge Van Metre had initially set the fee in only one of the cases. Plaintiff agreed to this procedure.

On reconsideration, the court refused to alter the prior fee allowances. To review the rulings, plaintiff petitioned this court for writs of certiorari, which were granted and then consolidated into this proceeding.

█ Certiorari lies when the district court is alleged to have exceeded its jurisdiction or to have otherwise acted illegally. *Van Meter v. Hellwege*, 356 N.W.2d 541, 543 (Iowa 1984). Plaintiff does not, of course, urge any jurisdictional issue as a basis for relief. He contends that the district court acted illegally in refusing to alter the fee allowances from those originally set.

Plaintiff relies on Iowa Code section 815.7, which provides for compensation for court-appointed criminal defense attorneys. According to the statute, such compensation "shall be the ordinary and customary charges for like services in the community to be decided in each case by a judge of the district court[.]" Plaintiff contends that the affidavits he has obtained show that the "ordinary and customary charges" for criminal defense representation in the community are higher than those allowed him by the court, and that the court's fee allowances were based on an erroneous legal standard, i.e., District Rule 1 rather than plaintiff's evidence regarding fees charged by local attorneys.

We do not agree that District Rule 1 is an erroneous legal standard for basing court-appointed attorney fees. The rule cites *Hulse v. Wifvat*, 306 N.W.2d 707 (Iowa 1981), in paragraph four. In paragraph five, it enumerates each of the eight factors discussed in *Hulse* as bearing on fee awards under Code section 815.7. *See* 306 N.W.2d at 710–12. In paragraph six, it establishes the $40-per-hour fee guideline in the judicial district or community in response to those factors. Because it is only a guideline, it can be departed from, as it was in one of the cases now before us.

The principal valuation issue presented in *Hulse* was whether the phrase "ordinary and customary charges for like services," contained in section 815.7, envisions a discounted fee as a consequence of an attorney's professional responsibility to assist the poor. We answered that question in the negative. We also rejected in *Hulse* the suggestion that in fixing compensation under the statute the court's inquiry concerning "charges for like services" should be directed only to cases involving indigent defendants.

We do not view *Hulse* as an indication that courts, in establishing reasonable compensation under section 815.7, may now consider only the amounts which are customarily charged by attorneys in the representation of non-indigent clients. That approach is suspect because the number of criminal cases involving non-indigent clients may represent a relatively small proportion of the felony criminal cases in many communities. U.S. Department of Justice, Bureau of Justice Statistics, *Report to the Nation on Crime and Justice*, (October 1983) at 57. As a result, the situations of both the attorneys and the clients in such cases may be sufficiently uncharacteristic of the majority of criminal cases so as to be of little guidance in determining what is reasonable compensation for attorneys representing indigent clients.

■ We believe it should be the goal of the courts in applying section 815.7 to establish a reasonable fee for the services performed in the particular case subject only to the requirement that compensation, once determined, shall not be discounted based on the attorney's professional responsibility towards the poor. We are certain that the judges of the district court have accumulated a considerable amount of experience in accomplishing this result in the years which have elapsed since the *Hulse* decision was filed. For this reason, we are reluctant to dispute the collective judgment of the several judges of the first judicial district that the use of a presumptively reasonable hourly rate as a guideline is a useful tool in dealing with a high volume of such claims in an expeditious manner.

■ Paragraphs four through six of the district rule appear to be a distillation and application of *Hulse* by the judges of the first judicial district based on the holding of *Hulse*, the conditions prevailing in the district, and the judges' expertise in the area of attorney fees. *See Parrish v. Denato*, 262 N.W.2d 281, 285 (Iowa 1978). In view of its incorporation of *Hulse* in every important respect, we do not believe that the rule constitutes an erroneous legal standard for determination of fees. The guideline stated in paragraph six of the rule represents a collective exercise of discretion on the part of the judges of the first district. Because a correct legal standard was used in formulating that guideline, our review is limited to whether the guideline, or the district court's application of it in the cases at issue, constitutes an abuse of discretion. *See Walters v. Herrick*, 351 N.W.2d 794, 796 (Iowa 1984).

■ On this record we are unwilling to conclude that the guideline itself represents an abuse of discretion. The affidavits collected by plaintiff show a fee range of $50 to $75 per hour for similar work done by local attorneys for private-pay clients. In view of the "certainty of payment" consideration that we have held applicable to determination of fees for court-appointed attorneys, *see Hulse*, 306 N.W.2d at 712; *Mathison v. Young*, 333 N.W.2d 477, 479–80 (Iowa 1983), we do not conclude that the $40-per-hour guideline is so low as to be an abuse of discretion.

■ Nor do we find that the district court's adherence to the guideline in the cases at issue was an abuse of discretion. Although plaintiff offered some evidence as to his standing and experience as a criminal lawyer, no evidence was offered regarding the other factors enumerated in *Hulse*, such as difficulty of the cases involved here, or the results obtained in each of those cases. Plaintiff asserted only that the court applied the wrong hourly rate to his claims. No other *Hulse* factor is pointed to by plaintiff as being disregarded by the court. The evidence by which plaintiff hoped to induce the court to depart from the Rule 1 guideline was not so overwhelming as to render the court's general adherence to the guideline, with one exception in plaintiff's favor, an abuse of discretion.

We believe it is also pertinent that attorneys in Black Hawk County are under no compulsion to accept court appointments for indigent criminal defense work. These appointments are made from a list of attorneys who have voluntarily expressed a desire to undertake such work. The attorneys know that the guideline for payment in these cases will be $40 per hour unless special circumstances are shown. Their reasonable expectations are satisfied when they are awarded at least $40 per hour, and perhaps more, for their services, as occurred here. This situation is akin to a contract system for indigent criminal defense services. Nothing in *Hulse* or in Iowa Code section 815.7 forbids such a system if the fee guideline itself and the exercise of the court's discretion in applying the guideline do not produce a result which clearly contravenes the statute.

■ Plaintiff argues that the district court, in refusing to alter the fee awards, did not cite *Hulse* or any of its progeny. This does not control our decision. We do note that one judge, who initially made an

award in one of the cases at issue, recited the *Hulse* factors in his ruling as having been considered before fixing the fee. However, it was not incumbent upon that judge or the defendant judge to demonstrate compliance with *Hulse*. *Walters v. Herrick*, 351 N.W.2d at 797. The burden of proof was upon plaintiff to show that the court did not apply the standard of *Hulse*. *Id.* We conclude plaintiff has not met that burden. Because we also conclude that the court did not abuse its discretion in applying the *Hulse* standard to the facts before it, the writs of certiorari are annulled.

Our decision today does not preclude the possibility that other systems of compensation for court-appointed attorneys may be permissible under Iowa Code section 815.7 that will provide competent representation to indigents in criminal cases, prevent vast disparity in fees allowed in the various counties throughout the state, and be fair to the attorneys providing the services and the taxpayers who pay the fees awarded.

WRITS ANNULLED.

All Justices concur except SCHULTZ, J., who concurs specially, and UHLENHOPP, J., who dissents, and REYNOLDSON, C.J., and McCORMICK, J., join the dissent.

SCHULTZ, Justice (concurring specially).

Despite serious concerns regarding the $40-per-hour guideline, I concur. When used solely as a guideline, I am not convinced that the hourly rate violates Iowa Code section 815.7 as interpreted in *Hulse v. Wifvat*, 306 N.W.2d 707 (Iowa 1981). Because I am certain that in too many instances the guideline will be used to establish the fee by a simple multiplication method rather than the application of the correct factors for the allowance of fees that were set out in *Hulse*, I must express my concerns and suggestions.

Adherence to a fixed hourly rate, especially if it is low, is a step backwards and defeats the purpose of section 815.7. It will eventually increase the cost to the taxing body; more importantly, it will decrease the quality of legal services rendered to the indigent criminal defendant. Thus, it will destroy the very enlightened purpose behind the enactment of section 815.7.

The obvious purposes of section 815.7 are two-fold. First, it meets the constitutional standards requiring legal representation for indigent criminal defendants. Secondly, reasonable compensation is defined in a manner that should attract competent and effective counsel. Whether or not we are meeting this second purpose forms the central issue of this case.

I believe that it is self-evident that to attract able counsel to accept court appointments, the State must provide adequate remuneration. As in any other profession, the skills and abilities of attorneys that practice law vary. The more able attorneys can command larger fees. Despite ethical considerations, it is obvious that modern day law offices have high overhead which must be paid from the fees that a lawyer can generate. The legislature wisely recognized the problem presented by the great number of indigent defendants that need competent representation and realized the bar no longer could be expected to greatly subsidize the public by performing pro-bono criminal work. The legislature not only may give, but it also may take away. Unless the bench and bar monitor court appointment fees carefully, the legislature that soon will assume responsibility for the payment of these fees may attempt to regulate the situation.

We indicated in *Hulse* that factors other than a fixed rate of compensation must be considered in setting fees. 306 N.W.2d at 712. Flat hourly rates do not take into account such factors as the difficulty of issues, the responsibility assumed, and the experience of the attorney. More importantly, flat hourly rates do not compensate an efficient lawyer who obtains a good result in a minimum of time. Rather than provide an incentive to reduce hours spent, flat rates benefit procrastination and unnecessary work. I believe that the vast majority of the lawyers place their clients'

interests before their own. When lawyers are privately retained on criminal cases, they must consider such matters as the cost to the client when they evaluate a course of action. We put blinders on if we fail to recognize that not all lawyers on indigent defense appointments recognize the factor of costs when a governmental unit is footing the bill. In some instances research is conducted, suppression hearings are held, depositions are taken, and cases are tried, not for the benefit of the client, but to increase the number of hours spent on the case. With our rotating system of judges, it is not unusual for two to four judges to sit on portions of a criminal proceeding. County attorneys who have to deal with defense lawyers seldom complain about fees, and when they do, they do it somewhat apologetically. The system is difficult at best to monitor. The result is higher fees, unhappy taxpayers and a greater time burden placed on the prosecutors and the judiciary.

I know that judges and lawyers are seeking better solutions; however, reliance upon a flat rate even for a guideline is questionable at best. I suggest that there must be more than one hourly guideline with the rates elevated according to the severity of the charge. Further, I believe that a limitation on billable hours should be set, depending on the type of case and the stage of the proceedings at which final disposition is achieved. Flexibility should be built in so additional chargeable hours would be available by securing a court order prior to incurring the additional hours. In addition to a maximum limitation, I believe that there should be a minimum fee available that would be large enough to encourage efficient and expeditious dispositions. If an experienced lawyer can obtain a good result in a minimum of time, the fees should not be confined by multiplying hours spent by an hourly rate.

In summary, I believe these suggestions would benefit the criminal defendant, the bar and the taxpayers. I believe that the adoption of a flat hourly rate as a guideline will in the end produce the opposite results.

UHLENHOPP, Justice (dissenting).

The judges of the First Judicial District, which includes Black Hawk County, maintain a list of attorneys who are willing to accept appointments to represent indigent defendants in criminal cases and indigent applicants in post-conviction proceedings. The judges have also adopted District Rule 1 which includes the following: "As a guideline only, the sum of $40 per hour is established as the average, ordinary, and customary charges for like services in the District."

The district court in Black Hawk County appointed Mr. Coonrad to represent indigents in several cases. Mr. Coonrad represented the indigents and subsequently presented his claims for services. In his claims, in addition to cash advanced for expenses, he listed his hours of services for research, travel, conferences, other out-of-court time, pretrial in-court time, and trial time. For the total of such hours in each case he asked for compensation at the rate of $65 per hour.

Various judges passed on the claims, and they allowed Mr. Coonrad's expenses and $40 times the numbers of hours of service except for one case in which a judge allowed $45 per hour.

Mr. Coonrad objected to allowances of less than $65 per hour, and requested reconsideration of the claims. He accompanied his requests with his affidavit and the affidavits of seven other local attorneys practicing in the criminal defense field. One attorney stated he was receiving "$65.00 an hour for work on private pay criminal cases. . . ." Another stated, "When I take a case under a private agreement, my fee is based roughly on an hourly rate which ranges from $60.00 per hour to $75.00 per hour, with adjustments for unique considerations that might be involved in a given case. The eventual total fee may exceed $75.00 per hour in a given case or it may be less than $60.00 per hour. The final bill will usually receive some adjustment from the hourly rate, depending on the result and other factors which may

be considered in charging a fee pursuant to the Professional Code of Responsibility." Another stated, "The criminal work that I do on a private basis is billed at the rate of $60 per hour." Another, "That although I charge a flat fee for most private pay criminal defense representation, I established that fee based on the nature of the charges and the individual facts of each case. I do generally average in excess of $75.00 per hour, however, by the fees which I charge." Another stated he charged $50 per hour; also, "I charge criminal work, generally, on a retainer up front plus hourly basis, or if the client wishes, on a set fee for the entire matter, in which case, the total fee is guaranteed regardless of the time involved and that fee must be paid in advance." Another stated he used a minimum charge of $65 per hour and "most criminal work is charged at minimum of seventy-five dollars ($75.00) per hour." Another, "My own charges to my clients for criminal representations is $60.00 per hour and $500 per day in trial. This rate will vary both up and down depending on the client's financial abilities as well as the complexity and gravity of the offense charged."

The chief judge of the district asked Judge Van Metre to rule on Mr. Coonrad's requests for reconsideration. Judge Van Metre considered the affidavits and denied the requests, stating:

The Court has examined the claims and notes that Mr. Coonrad has voluntarily placed his name on the list maintained by the Court Administrator for court appointments to represent indigent defendants in Black Hawk County. He is under no compulsion to do this, and there are a number of able attorneys with equal or superior experience of Mr. Coonrad available in Black Hawk County who have also placed their names on this list and are willing to render legal services to indigents at the rate of $40.00 per hour. In other words, this is a customary fee in Black Hawk County for similar work.

Mr. Coonrad initiated these certiorari proceedings to test Judge Van Metre's rul-ing. The controversy does not involve the *amount* of Mr. Coonrad's services; that is not in dispute. It involves their *value*.

Several principal methods have been used throughout the country for valuing legal defense services: flat rates for various kinds of cases; fees set by the court within stated limits; hourly rates; and discretionary fees set by the courts. Standards Relating to Providing Defense Services 30–31 (A.B.A. Approved Draft 1968).

Iowa formerly had a version of the flat rate method. Iowa Code § 775.5 (1958). In section 775.5 of the Iowa Code of 1962 the General Assembly placed this state in the discretionary group ("reasonable compensation to be decided in each case by the court"). Under that statute, this court decided "reasonable" compensation meant a sharing the burden of the defense of indigents—part of the financial burden to be borne by the public and part by the attorneys in their traditional role as defenders of the defenseless and oppressed. *Woodbury County v. Anderson*, 164 N.W.2d 129 (Iowa 1969). In section 815.7 of the Code of 1979 (and subsequent Codes) the Assembly left Iowa in the discretionary category but added the following language which I have emphasized: "reasonable compensation *which shall be the ordinary and customary charges for like services in the community* to be decided in each case by *a judge of* the *district* court...."

We subsequently construed the emphasized language and held that it provides for defense fees at the going rate in the community without reference to the fact of representation under court appointment except for the element of certainty of payment. *Hulse v. Wifvat*, 306 N.W.2d 707 (Iowa 1981). We stated:

[U]nder section 815.7 reasonable compensation is "the ordinary and customary charges for like services in the community." The district court held that "like services" means similar services rendered to indigent defendants pursuant to court appointments.

. . .

[T]he new language refers to ordinary and customary *charges* for like services in the community. It does not refer to ordinary and customary fee *allowances* for similar indigent services.... *The language plainly refers to fees charged to nonindigent clients in similar litigation.*

We thus hold that plaintiff is entitled to full compensation for his reasonably necessary services.

*Id.* at 710, 712 (emphasis added). A judge of the district court who applies the *Hulse* standard has broad discretion in setting the amount of the fee. *Id.* at 709. *See also Lunde v. Ruigh,* 356 N.W.2d 566 (Iowa 1984); *Walters v. Herrick,* 351 N.W.2d 794 (Iowa 1984). Judges may call upon their own knowledge and experience as to value of legal services in the community. *Hulse,* 306 N.W.2d at 709.

The issue in these certiorari proceedings is whether Judge Van Metre applied the standard of section 815.7. He relied on the district rule fixing $40 per hour as a guideline. The specific question therefore is whether that rule comports with the standard in section 815.7 as explicated in *Hulse.*

Two difficulties appear in endeavoring to harmonize the district rule and the Code provision. One is that the rule uses a $40 guideline set by the judges, in contrast to fees arrived at by the unregulated flow of forces between attorneys and clients "in the community" as contemplated by the statute. Judge Van Metre stated in his ruling: "All the attorneys who do submit their names have been aware for a number of years that $40.00 per hour is the rate paid by the Courts; and if they are not satisfied with that figure, they can remove their name from the list." This places an attorney in the position of accepting $40 per hour, whatever the going rate in the community may be, or of foregoing court appointments. Presumably the figure could be reduced to $35 per hour or even lower, if sufficient attorneys came forward to handle the workload. But specified figures per hour do not become "the ordinary and customary charges for like services in the community" because some lawyers will accept them under court order. That approach divorces compensation for court appointments from compensation for private retainers and flies directly in the face of the statute and *Hulse.*

The other difficulty is the per hour approach in the rule: $40 per hour. If the Iowa legislature had desired a per hour approach it would have adopted that method, as some jurisdictions have done. The per hour approach is easier to apply, but it is not appropriate for ascertaining "ordinary and customary charges" under our statute.

Iowa attorneys function under the Iowa Code of Professional Responsibility for Lawyers. That Code lists the following factors for determining reasonable fees:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

D.R. 2–106(B). This court adopted the substance of these factors and applied them to defense services, except for the last one, in *Parrish v. Denato,* 262 N.W.2d 281, 285 (Iowa 1978) (" 'In determining a reasonable attorney fee, generally the time necessarily spent, the nature and extent of the service, the amount involved [or, as here, the possible punishment involved], the difficulty of handling and importance of issues, responsibility assumed and the results obtained,

as well as the standing and experience of the attorney in the profession should be considered.'" (Citations omitted.)). I add that under *Hulse* certainty of payment is also a factor for consideration.

This court has stated in previous decisions that the time involved is only one of the relevant factors. *Hulse,* at 712 ("Although we recognize the convenience of a fixed rate of compensation based on time expended, a rigid adherence to that method of valuation ignores the other factors which must be considered in determining reasonable compensation. True uniformity in compensation can be achieved only when all the variables affecting reasonableness are considered."). *See also Walters,* 351 N.W.2d at 797; *Mathison,* 333 N.W.2d at 480. While the present district rule also states the factors in DR 2–106(B), the allowances in each of the six cases involved in these proceedings was on the flat $40 per hour rate ($45 per hour in one case). The compensation comes out to the penny at those hourly rates. Indeed, Judge Van Metre stated that attorneys who submit their names have been aware for a number of years "that $40.00 per hour is the rate paid by the Courts. . . ."

I conclude that the district rule and the fee orders in the six cases made pursuant to it cannot be squared with the standard in section 815.7 and *Hulse.* The result of the majority's decision is that districts can in fact adopt and enforce an hourly rate below the going charges in the community. Section 815.7 of the Code has been changed from "ordinary and customary charges for like services in the community" to "ordinary and customary charges for like services at the courthouse."

I realize that a fixed dollar figure combined with a per hour approach is simple and quite easily applied. I also appreciate that district judges are in a direct line of fire between taxing bodies on one side and the defense bar on the other, as demonstrated in the contents of the appendix in these proceedings. This is an inevitable result of our statutory discretionary system based on customary charges in the community. The General Assembly chose to adopt that basis and to confide the discretion to the district judges.

Fixing fees by judges, as with lawyers' fixing fees in private practice, has always been difficult. The task requires time, judgment, and fortitude. But it is part of judging.

I would sustain the writ and remand the proceedings to district court for fee hearings and orders consistent with these views.

REYNOLDSON, C.J., and McCORMICK, J., join in this dissent.