Robert J. HEARITY, Appellant,

v.

BOARD OF SUPERVISORS FOR FAYETTE COUNTY, Fayette County Attorney, Larry Woods, David Katsumes, Jeffrey Clements, Charles Hurley, W. Wayne Saur, Lois Miller, Merl McFarlane, Wayne Pape, Appellees.

No. 87–930.

Supreme Court of Iowa.

March 22, 1989.

Robert J. Hearity, Oelwein, pro se.

Jay A. Nardini of Ball, Kirk, Holm & Nardini, P.C., Waterloo, for appellees Fayette County Atty. and W. Wayne Saur.

David J. Dutton and John J. Hines of Mosier, Thomas, Beatty, Dutton, Braun & Staack, for appellees Fayette County Bd. of

Supervisors, Lois Miller, Merl McFarlane, and Wayne Pape.

Frederick G. White, Waterloo, and Larry F. Woods, Oelwein, for appellees Jeffrey Clements, Charles Hurley, David Katsumes, and Larry Woods.

Considered by LARSON, P.J., and CARTER, LAVORATO, SNELL and ANDREASEN, JJ.

CARTER, Justice.

Plaintiff, Robert J. Hearity, appeals from a judgment entered on a directed verdict for the defendants in his claims brought under the Iowa Competition Law (Iowa Code ch. 553). The litigation challenges the validity of a contractual arrangement between the Fayette County Board of Supervisors and four attorneys for indigent legal services in criminal cases and juvenile court. Upon consideration of plaintiff's arguments on appeal, we affirm the judgment of the district court.

The following facts appear from the record. Prior to July 1, 1985, Fayette County provided legal representation to indigent adults charged with criminal violations and indigent juveniles by a system of court-appointed attorneys pursuant to Iowa Code section 331.778. The court-appointed attorneys were paid on a case-by-case basis as ordered by the court. Evidence at trial indicated the cost to the county of court-appointed criminal and juvenile representation rose from approximately $39,000 in fiscal year 1980 to approximately $93,000 in fiscal year ending July 1, 1985. Seeking to reduce the cost of indigent representation, the Fayette County Board of Supervisors passed a resolution on April 15, 1985, to establish the office of a full-time public defender beginning on July 1, 1985. By an article published in the local newspaper on April 18, 1985, the board invited interested persons to apply for the position before May 10, 1985.

On May 6, 1985, three attorneys submitted a letter to the board of supervisors proposing an agreement wherein the three attorneys would provide legal representation to all Fayette County indigents for a set annual fee of $48,000. The attorneys were defendants Larry Woods, from Oelwein, Iowa; T. David Katsumes, from Elgin, Iowa; and Charles Hurley from Fayette, Iowa. At some time after the initial proposal, these three attorneys contacted Jeffrey Clements about joining the group.

A copy of the proposal was sent to W. Wayne Saur, Fayette County Attorney, and J.G. Johnson, Assistant County Attorney. On May 13, 1985, Saur met with the board to discuss the proposal. He later testified that he advised the board to investigate the proposal because he believed the $48,000 contract would cost the county less than the estimated $62,000 necessary to establish a full-time public defender's office. On May 28, Saur met with District Judge James Beeghly and juvenile court referee Alan Allbee to discuss the proposal. From that meeting he concluded the establishment of a public defender's office would be even more expensive because predictions that, because of conflicts problems, a judge would have to appoint an outside attorney to represent indigents even with a public defender.

Nine attorneys applied for the position of public defender, including defendant Jeffrey Clements. A panel of district court judges interviewed the nine applicants and on May 13, 1985, they certified two candidates, Kim West and Jeffrey Clements, to the board of supervisors. On June 3, 1985, the board interviewed the two candidates.

On Monday, June 10, the board passed a resolution abolishing the office of public defender, and voted to accept the proposal submitted by Woods, Katsumes, Hurley, and Clements, with the amendment that they would be employed by separate contracts, rather than one single contract. On June 13, 1985, the board entered into four separate contracts with the four attorneys. The contracts provided that, for a fee of $1000 per month, each attorney would provide twenty-five percent of all court-appointed legal services required in Fayette County for indigent criminal defendants and juvenile cases, beginning July 1, 1985.

On August 15, 1985, the plaintiff, Robert J. Hearity, filed the petition in this action

claiming he was injured by actions of the defendants in forming an illegal combination in restraint of trade. Hearity is an attorney who has practiced law in Fayette County since 1982 and had received numerous court appointments prior to July 1985. Plaintiff prayed for actual damages, costs, attorney fees, exemplary damages, and an injunction against further illegal activity. On October 24, 1985, plaintiff amended his petition to add claims that the defendants engaged in illegal price-fixing. On April 23, 1987, plaintiff filed a second amended petition making identical challenges to the June 1986 renewal of the original contracts.

In sustaining defendants' motions for directed verdict, the district court concluded that (a) plaintiff had failed to establish that the challenged agreements operate to control an otherwise competitive market; and (b) the board of supervisors was empowered to make the contract under the county's constitutional home rule power, a circumstance which triggers the exemption to the Iowa Competition Law contained in Iowa Code section 553.6(5) (1987). Plaintiff urges on this appeal that the challenged agreements do constitute illegal price-fixing and improper regulation of competition under Iowa Code sections 553.4, 553.5, that the public agency exemption contained in section 553.6(5) is inapplicable, and that, if the public agency exemption is applicable, it only affects the county's liability and does not extend to the other parties to the contract. In considering the arguments of the parties on these issues, we conclude that the trial court acted correctly in directing a verdict on plaintiff's claims.

The current Iowa Competition Law (Iowa Code ch. 553) was enacted in 1976. 1976 Iowa Acts ch. 1224. For a period commencing many years prior to that time and continuing to the present day, there has never been a competitive market in the field of indigent defense services by lawyers, either with respect to the securing of business or the fixing of prices. The selection of counsel and the establishing of fees has been monopolized by the appointing power and fee-establishing responsibility of the district court judges. This situation has been mandated by Iowa Code section 775.5 in effect from 1946 to 1979 and by Iowa Code sections 815.7, 815.10, in effect from 1979 to the time of the challenged transactions. A similar statutory scheme providing exclusive judicial control existed with respect to legal services for indigent parties in juvenile court. *See* Iowa Code §§ 232.28, 232.51, 232.52, 232.53 (effective from 1966 to 1979); Iowa Code §§ 232.11, 232.141 (in effect from 1979 to the time of the challenged transactions).

The only exception to this system of attorney selection and fee-fixing is found in the statutory authorization for county-funded public defender offices. At the time of the enactment of the Iowa Competition Law, these offices were authorized in Iowa Code chapter 336A (1975). Similar authorization had been contained in earlier statutes dating back to 1965. Public defender offices today are authorized by Iowa Code section 331.776 (1987) and temporary court transition rules. To the extent that public defender offices have existed in addition to the traditional court-appointed attorney system, this has in no way served to establish a free-market environment for the selection of such legal services. Both the court-appointed attorney system and the public defender system are monopolistic in their operation.

It is fair to conclude that the legislature in enacting the Iowa Competition Law was seeking to regulate anticompetitive commercial activities in those areas where it believed that free-market conditions should prevail. In enacting this law, the legislature was well aware of the statutes governing the selection of lawyers to represent indigent criminal defendants and indigent persons in juvenile court. There has been no indication that it wished to change the monopolistic nature of these systems of obtaining professional legal services. Consequently, we can only conclude that it did not have such services in mind when it enacted the antimonopolistic provisions of Iowa Code sections 553.4, 553.5.

The role of the counties and county boards of supervisors in the financing of legal services for indigents in criminal and

juvenile cases, prior to state funding of those activities, was always limited to acting as paymaster. The boards of supervisors have never had any authority to designate the lawyers who will provide indigent defense and juvenile services in the absence of approval from the judicial branch of government. Nor did these public bodies have any authority over the amount of compensation to be allowed. In *Coonrad v. Van Metre*, 362 N.W.2d 197, 200 (Iowa 1985), we hinted that contracting for indigent criminal defense services was an option available in the attorney selection process. We later formalized such approval in Guidelines, Costs of Court–Appointed Attorney Fees, promulgated on August 19, 1985.

Under federal antitrust laws, it has been held that a state supreme court, when acting in a legislative capacity, occupies the same position as that of a state legislature, and is exempt from federal antitrust liability. *Bates v. State Bar of Arizona*, 433 U.S. 350, 360, 97 S.Ct. 2691, 2697, 53 L.Ed. 2d 810, 821 (1977). Although the court is not a party to the present litigation, we believe that its statutory authorization in the area of indigent criminal and juvenile legal services places its regulatory actions outside the operation of the Iowa Competition Law. The actions of the county and its board of supervisors is expressly exempted from operation of that anticompetition legislation by Iowa Code section 553.-6(5).

To the extent plaintiff argues that any exemption from liability which has been conferred on the public agencies approving these contracts cannot be carried over to the private citizen lawyers, that argument lacks merit on the present facts. The precise nature of private party immunity in such situations need not be determined because of an obvious lack of causation. As one commentator has stated:

> Where private parties are involved along with state agencies or officials, it is necessary to determine who "caused" or "imposed" the relevant restraint.

P. Areeda & H. Hovenkamp, *Antitrust Law* § 212.6 (Supp.1988). Only if the private party is determined to have caused the restraint need the court determine whether it shares the public agency's immunity.

An example of the foregoing analysis is found in *Hoover v. Ronwin*, 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984). In that case, a lawyer who had failed to pass the Arizona Bar examination sued the Arizona committee of bar examiners for having conspired to set high grading standards with anticompetitive purposes. The Supreme Court rejected the antitrust claim against the committee members, holding that, because they only recommended denying the plaintiff admission, and only the state supreme court in Arizona had the power to actually admit the lawyers to practice, any restraint was caused by the action of the court and not the committee. The Supreme Court stated in this regard: "conspire as they might, the Committee could not reduce the number of lawyers in Arizona." *Id.* at 575, 104 S.Ct. at 1999, 80 L.Ed.2d at 604.

This analysis fits the present case as well. The plaintiff really challenges the decision of the county, consistent with guidelines promulgated by this court, to contract with a limited number of attorneys to provide indigent legal services. Conspire as they might, the four attorneys could not have restrained competition through an exclusive contract without the action of the affected public agencies. Under this analysis, the validity of the contract depends only upon the entitlement of the board of supervisors and this court to operate outside the scope of the Iowa Competition Law.

Although plaintiff has attempted to urge on this appeal that the board of supervisors, in approving the challenged contract, violated legal requirements for open meetings and competitive bidding, we find that these claims do not impact on the issues involving the application of the Iowa Competition Law. These issues were not presented in the district court as separate claims for relief. We therefore have nothing to review with respect to these assertions.

Our previous discussion has, we believe, established the lack of merit in plaintiff's claims against the board of supervisors, the individual board members, and the four attorneys who contracted with the county. We also find no merit in his claim against the county attorney of Fayette County, either individually or in his official capacity. It is clear from the record that that person's role with respect to the challenged transactions was to give legal advice to the board of supervisors as to the validity of the challenged transactions. Although we doubt that such participation would give rise to a third-party legal liability even if the transactions had proved to be legally infirm, *see Schriener v. Scoville,* 410 N.W. 2d 679 (Iowa 1987), there is clearly no basis for liability where this court has upheld the validity of the challenged transactions.

For all of the reasons stated, we conclude that the district court acted correctly in directing a verdict for all of the defendants. Its judgment should be and is affirmed.

AFFIRMED.