Kent W. LEWIS, Plaintiff,

v.

**IOWA DISTRICT COURT FOR DES MOINES COUNTY, Defendant.**

Margaret E. HAESSLER, Plaintiff,

v.

**IOWA DISTRICT COURT FOR DES MOINES COUNTY, Defendant.**

Nos. 95–561, 95–562.

Supreme Court of Iowa.

Oct. 23, 1996.

Rehearing Denied Nov. 18, 1996.

David A. Hirsch of Beckman & Hirsch, Burlington, for plaintiffs.

Thomas J. Miller, Attorney General, and Diane Stahle, Assistant Attorney General, for defendant.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

These two above-captioned cases have been consolidated for review purposes, on this court's own motion, due to the similarity of issues. In both cases the plaintiffs challenge by petitions for writ of certiorari the fee guidelines for payment of court-appointed attorneys as being in violation of various constitutional and statutory laws. The district court rejected plaintiffs' arguments and denied any relief. We annul the writs.

## I. Background Facts and Proceedings

In the first captioned case, plaintiff Kent Lewis, an attorney, represented a juvenile in a delinquency adjudication proceeding and on appeal pursuant to court appointment. After the appeal was completed, Lewis filed a request for a fee authorization of up to $3500 for the prosecution of the appeal. Lewis submitted a statement requesting fees in the amount of $3036 plus expenses of $286.30. The fee guidelines provide that the normal fee for appellate attorney work on court appointments is from forty to sixty dollars per hour with a maximum allowable fee of $1600 for an appeal in a juvenile case. Fees in excess of that amount must receive prior court authorization. At the hearing on the fee request, Lewis submitted evidence that his normal billing rate is $100 per hour and that the rate set by the guidelines is below the rate normally charged by privately retained attorneys. Lewis argues that the lower rates fixed by the guidelines deprive indigents of their rights to equal protection, due process, and assistance of counsel by restricting their legal representation.

After hearing the case, the district court ordered that Lewis was entitled to the normal appeal amount of $1600 plus $500 because of the case's complexity and the time expended on the appeal. We granted Lewis' petition for writ of certiorari challenging the district court's fee order.

In the second captioned case, the plaintiff, Margaret Haessler, was appointed counsel for an indigent mother in a child-in-need-of-assistance proceeding at trial and on appeal. The district court approved Haessler's initial request for fee authorization up to $3000 for her trial work. In addition to the specific fee request that had been approved, she sought an additional $4200 for her appellate representation of the mother. The fee guidelines set the normal compensation rate for appellate work in court appointments at forty to sixty dollars per hour with a total amount above $1600 requiring prior court approval.

Haessler filed a supplement to the request for additional fee authorization challenging the constitutionality of the maximum hourly rate as well as the total fee set by the guidelines. Haessler claimed that the requirements denied indigents their constitutional rights to equal protection, due process, and effective assistance of counsel. At a hearing on the fee authorization request, which was combined with the request for fees in the *Lewis v. Iowa District Court* case, Haessler presented evidence that her normal billing rate was eighty dollars per hour. In addition, evidence was presented indicating that the average billing rate for attorneys was higher than that provided by the fee guidelines and that the normal cost of an appeal of this type was more than the $1600 level set by the guidelines.

The district court entered an order authorizing fees to be awarded for Haessler's representation of $1600 plus an additional $500. We granted Haessler's petition for a writ of certiorari challenging the legality of the court's fee order.

## II. Legal Issues

In both of these cases, plaintiffs' attorney asserts the following legal propositions:

a. The operating caps of $60 per hour and the $1600 maximum fee per appeal, without prior court authorization for additional fees, violate the Fourteenth Amendment to the United States Constitution by denying equal protection of the law to indigents in that the caps effectively deny counsel to indigents, have a chilling effect on counsel's representation of indigents, and tend to deny seasoned counsel to indigents.

b. The operating caps, on their face or as applied, violate the Fifth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment to the United States Constitution, by denying substantive and procedural due process to indigents, in that effective representation is not provided, a chilling effect on the attorney's representation occurs, and a tendency to deny seasoned counsel to indigents results.

c. The operating caps, on their face or as applied, violate Iowa statute, section 815.7, regarding fees for court-appointed attorneys and case law that require payment of reasonable compensation.

In the *Lewis* case, an additional assignment of error is made. That assignment is:

d. The operating caps, on their face or as applied, violate the Sixth Amendment to the United States Constitution, by effectively denying counsel to indigents, by having a chilling effect on the attorney's representation of indigents, and by having a tendency to deny seasoned counsel to indigents.

## III. Standard of Review

■ Ordinarily we review a certiorari action for correction of errors at law. Iowa R. Civ. P. 306; *Whitlock v. Iowa Dist. Ct.*, 497 N.W.2d 891, 893 (Iowa 1993); *Zimmermann v. Iowa Dist. Ct.*, 480 N.W.2d 70, 74 (Iowa 1992). But the existence of a constitutional issue requires us to review de novo the evidence bearing on that claim. *Montgomery v. Bremer County Bd. of Supervisors*, 299 N.W.2d 687, 692 (Iowa 1980). Certiorari review of constitutional issues requires an independent evaluation of the totality of the circumstances under which the challenged ruling on the constitutional issues was made. *Webster County Bd. of Supervisors v. Flattery*, 268 N.W.2d 869, 872 (Iowa 1978).

## IV. Constitutionality of Fee Guidelines

### A. Standing

■ Neither plaintiff is contesting a particular fee award, but instead they challenge the entire scheme of fees for court-appointed attorneys. The State contends that both plaintiffs lack standing to bring this issue before the court because neither seeks personal relief, but relief on behalf of all indigents who have court-appointed attorneys. Although their primary argument is based upon the harm done to indigent defendants, both plaintiffs claim that court-appointed representation has an adverse impact on their income as practicing lawyers.

Plaintiffs also assert they suffer "personal aggravation" in that they are paid forty to fifty percent less for court-appointed cases than for cases they would personally select in their respective private practices. They presented evidence that the average overhead for a lawyer's office is fifty percent of every $100 in gross income. They state that it is still fifty percent of $100 if the lawyer is only paid sixty dollars instead of $100. Thus, because of constant overhead expenses, they contend the court-appointed fee nets the lawyer about ten dollars per hour. Evidence was presented by other practicing lawyers that appeals like those involved here usually take sixty hours or more so that the $1600 figure is most often exceeded. Plaintiffs argue that law offices can no longer subsidize court appointment work by income from other legal work and that young lawyers, who need and want work from court appointments, are unfairly compensated at the start of their careers when they are already burdened by heavy educational debt. They further contend that older, more experienced lawyers, refuse these under-compensated appointments because they wish to give prompt legal service to their regular clients and fear that they will lose them if their time is consumed by court appointments.

■ The State correctly notes the general principle that litigants cannot challenge the constitutionality of a statute unless they can show they have been injured by it. *Green v. Shama*, 217 N.W.2d 547, 556 (Iowa 1974). In granting third party standing, the United States Supreme Court has articulated two requirements before a third party may assert the constitutional rights of another:

> When a person or entity seeks standing to advance the constitutional rights of others, we ask two questions: first, has the litigant suffered some injury-in-fact, adequate

to satisfy Article III's case-or-controversy requirement; and second, do prudential considerations ... point to permitting the litigant to advance the claim? *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624, n. 3, 109 S.Ct. 2646, 2651, n. 3, 105 L.Ed.2d 528, 540, n. 3 (1989).

As stated above, we believe the plaintiffs have presented sufficient testimony establishing that they have an adequate interest in the fee award to meet the constitutional minimum for standing. In addressing the prudential considerations, the Court has emphasized two additional concerns: first, that constitutional rights should not be litigated unnecessarily, and second, that the third party may not be able to advocate the right as effectively as its actual holder. *See Singleton v. Wulff*, 428 U.S. 106, 113–14, 96 S.Ct. 2868, 2873–74, 49 L.Ed.2d 826, 832–33 (1976).

In light of these prudential concerns, we find that the plaintiffs satisfy the requirements for third party standing. Although the *Caplin* case did not concern fees for court-appointed attorneys, we find the Fourth Circuit's analysis to be helpful. In considering whether a law firm had standing to assert the constitutional rights of its client in order to recover its fee, the court found

> The assertion of this constitutional claim is extremely important to Caplin & Drysdale, criminal defendants, and the bar, and its resolution is in no way "unnecessary." Caplin & Drysdale is fully "as effective a proponent" of the right asserted as the defendant.

*In re Forfeiture Hearing as to Caplin & Drysdale, Chartered*, 837 F.2d 637, 642 (4th Cir.1988) (citation omitted), *aff'd sub nom. Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989).

The same considerations are present in the cases before us. We agree that the issues of a defendant's right to effective representation and an attorney's right to fair compensation in cases such as these are "inextricably linked." *Hillsborough County v. Unterberger*, 534 So.2d 838, 841 (Fla.Dist.Ct.App. 1988). Therefore the circumstances particular to court-appointed representation warrant this review. To deny standing in cases such as these would put a lawyer in the unfavorable position of having to admit that inadequate representation was provided, thus raising the specter of malpractice and bar sanctions.

### B. Constitutional Questions

■ The Guidelines on Costs of Court–Appointed Counsel provide specific fee amounts that cannot be exceeded without prior court authorization. Exhibit "A" to the guidelines, which specifies the maximum fee awarded without prior approval, has not been updated since 1986. But this does not necessarily mean that the guidelines are unconstitutional. There is no showing that any particular indigent actually was placed at a disadvantage by the fee guidelines. Plaintiffs offer neither proof nor law to support their argument that the rights of indigent defendants are compromised by fees that are below the prevailing rate for such work in the community. Instead, they draw upon conclusions that the statutory cap creates a "chilling effect" on attorneys who are asked by the court to provide competent and zealous representation for an indigent client and imply that, as a result, the quality of representation indigents receive is unconstitutionally substandard.

In Iowa, attorneys are obligated to represent indigent persons when appointed by the court. *See* Iowa Code of Professional Responsibility for Lawyers EC 2–31 (1996). We agree with the Alabama Supreme Court's analysis when it considered a similar challenge to its state's fee guidelines. In assessing the constitutionality of Alabama's system for compensating court-appointed attorneys, the court noted "[t]hese contentions are made on the premise that lawyers will not provide effective assistance unless paid a certain amount of money. But the legal profession requires its members to give their best efforts in 'advancing the "undivided interests of [their] clients." ' " *Ex parte Grayson*, 479 So.2d 76, 80 (Ala.), *cert. denied*, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985) (quoting *Polk County v. Dodson*, 454 U.S. 312, 318–19, 102 S.Ct. 445, 449–50, 70 L.Ed.2d 509 (1981)). As we have noted,

Of course, counsel cannot offer a defendant only token representation because his compensation is inadequate. His remedy would be to withdraw from the case. If he stays on, he must afford the defendant the kind of effective representation to which every defendant is entitled.

*State v. Nelson,* 279 N.W.2d 1, 3 (Iowa 1979).

In *Postma v. Iowa District Court,* 439 N.W.2d 179 (Iowa), *cert. denied,* 493 U.S. 918, 110 S.Ct. 278, 107 L.Ed.2d 258 (1989), we considered the question of whether the same fee guidelines for court-appointed attorneys in criminal cases create a similar chilling effect on indigent representation. The fact that both cases before us involve juvenile proceedings does not alter the underlying analysis. In *Postma,* as in the cases before us, the appellant did not provide sufficient evidentiary or legal support for his assertion that indigents were denied effective representation by the fee guidelines. *Postma,* 439 N.W.2d at 182. In rejecting his claim, we reiterated that:

[A] per se violation of the right to effective counsel may exist even though counsel is available if "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial."

*Id.* (quoting *United States v. Cronic,* 466 U.S. 648, 659–60, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657, 668 (1984)). As was the case in *Postma,* plaintiffs' arguments do not persuade us that this is a case where the presumption of prejudice is so strong as to create a per se constitutional violation. Absent a showing of specific harm to an indigent's constitutional rights, plaintiffs' claims are without merit.

■ Furthermore, Sixth Amendment claims in similar cases as these have not been tenable unless the court-appointed counsel is totally uncompensated or unless the bar is required to assume the entire burden of indigent defense for nominal compensation with no provision for a public defender system. *See Bradshaw v. Ball,* 487 S.W.2d 294, 298 (Ky.1972); *State ex rel. Partain v. Oakley,* 159 W.Va. 805, 227 S.E.2d 314, 319 (1976).

Iowa law sufficiently provides for both attorney compensation and a public defender system. *See generally* Iowa Code ch. 13B (1995). Similarly, equal protection claims have been rejected absent a showing that the burden of court appointments has been distributed unequally among members of the bar. *State v. Rush,* 46 N.J. 399, 217 A.2d 441, 446 (1966). There is no claim made by either plaintiff that court appointments are disproportionately assigned.

It is important to note that the fee guidelines are not inflexible. The cap only provides for a maximum fee to be paid without prior court authorization. In fact, both of the plaintiffs did apply for and receive fees in excess of the cap imposed by the guidelines. In considering the guidelines in the context of criminal appointments, we noted "[t]he guidelines do set out certain amounts which cannot be exceeded without prior approval of the court. However, they have sufficient flexibility to meet the statutory requirement of reasonable compensation." *Postma,* 439 N.W.2d at 182. Thus, although the amount awarded a court-appointed attorney may be less than what an attorney may charge a private client, the guidelines themselves are not per se unreasonable.

### C. Iowa Law

Finally, plaintiffs assert that the fee guidelines violate Iowa statutory and case law requiring court-appointed counsel for indigent defendants at a fair rate of compensation. They fail, however, to provide facts or law that support this conclusion. There is no evidence in the record that indigent defendants are prejudiced by representation that is compensated at a rate less than that charged at private practice. It may be helpful to reiterate what this court has said before in considering this issue:

[Attorneys] are under no compulsion to accept court appointments for indigent criminal defense work. These appointments are made from a list of attorneys who have voluntarily expressed a desire to undertake such work. The attorneys know that the guideline for payment in these cases will be $40 per hour, unless special circumstances are shown. Their reason-

able expectations are satisfied when they are awarded at least $40 per hour, and perhaps more, for their services, as occurred here.

*Coonrad v. Van Metre,* 362 N.W.2d 197, 200 (Iowa 1985).

Although the fee guidelines may need to be reviewed to reflect the changes in the cost of practicing law in the last ten years, they still provide reasonable compensation for court-appointed attorneys, under constitutional and statutory mandates, and do not violate the constitutional rights of indigents.

**WRITS ANNULLED.**